UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JERIEL ALEXANDER,

                          Plaintiff,

                -v-

PRIVATE PROTECTIVE SERVICES,
INC.,

                          Defendant.

19-CV-10004 (JPO)

OPINION AND ORDER ADOPTING
REPORT AND RECOMMENDATION

J. PAUL OETKEN, District Judge:

    Plaintiff Jeriel Alexander ("Alexander") brings this action against Defendant Private

Protective Services, Inc. ("PPS"), a private security services firm.  Alexander asserts that PPS

unlawfully discriminated against him under the New York City Human Rights Law

("NYCHRL") by denying him entrance into a film shoot on the basis of his race.

    Before the Court is PPS's motion for summary judgment on Alexander's NYCHRL

claim, as well as applications by Alexander for Magistrate Judge Stewart D. Aaron to recuse

himself from the case.  Judge Aaron conducted a thorough and careful review and issued a

Report and Recommendation on November 2, 2023 advising that PPS's motion for summary

judgment be granted and that Alexander's applications for recusal be denied.  (ECF No. 158

("R&R" or "Report").)  For the reasons that follow, the Court adopts the Report in its entirety.

## I.    Background

    The Court assumes familiarity with the facts and history of the case based on the

recitation of facts in Judge Aaron's thorough Report (*see* R&R at 2-3), as well as this Court's

prior opinions.  *See Alexander v. Priv. Protective Servs., Inc.*, No. 19-CV-10004, 2022 WL

1567447 (S.D.N.Y. May 18, 2022) (ECF No. 70) ("*Alexander I*"); *Alexander v. Priv. Protective*

*Servs., Inc.*, No. 19-CV-10004, 2022 WL 16555312 (S.D.N.Y. Oct. 31, 2022) (ECF No. 103) ("*Alexander II*").

As relevant here, Alexander formerly worked as a security guard for PPS, a provider of private security services, from 2017 through 2018.  (ECF No. 135 ¶¶ 3, 5; ECF No. 143 at 14 ¶ 1.)  In taking the job, Alexander signed a hire packet that included the condition that he would "not seek employment or work for any PPS Inc. customers" for "a period of 5 years immediately following the termination of [his] employment with PPS Inc."  (ECF No. 135 ¶¶ 7-8, ECF No. 143 at 14 ¶ 2.)  In or about July 2019, PPS entered a contract with Big Fish Entertainment to provide security services for Big Fish productions, including for an October 3, 2019 film shoot at Pier 132.  (ECF No. 135 ¶¶ 9, 11.)  Alexander arrived at Pier 132 on October 3, 2019, which was less than a year after Alexander stopped working for PPS, and he sought admission to the event to act as an "extra" in the production being filmed.  (ECF No. 135 ¶¶ 15, 19; ECF No. 143 at 15-16 ¶ 7.)  A PPS employee denied Alexander entry into the event.  (ECF No. 135 ¶ 23; ECF No. 143 at 15-16 ¶ 7.)

On May 8, 2023, PPS filed the motion for summary judgment that is now before the Court.  (ECF No. 133.)  Alexander filed an opposition on June 7, 2023.  (ECF No. 143.)  PPS filed a reply in support of its motion on June 20, 2023.  (ECF No. 148.)  Alexander and PPS then filed additional briefs on July 5, 2023 and July 14, 2023, respectively, pursuant to orders issued by Magistrate Judge Aaron.  (ECF Nos. 151, 154.)  On July 17, 2023 and July 31, 2023, Alexander filed requests for Judge Aaron to recuse himself from the case.  (ECF Nos. 156, 157.)

## II.   Legal Standard

When reviewing a report and recommendation by a magistrate judge, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1).  "The Court reviews the Report strictly for clear error

where no objection has been made and will make a *de novo* determination regarding those parts

of the Report to which objections have been made." *McDonaugh v. Astrue*, 672 F. Supp. 2d 542,

547 (S.D.N.Y. 2009). When the objecting party is proceeding *pro se*, as is the case here, the

court is "ordinarily obligated to afford a special solicitude" to that party, *Tracy v. Freshwater*,

623 F.3d 90, 101 (2d Cir. 2010), and that party's submissions are read "to raise the strongest

arguments that they suggest," *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006) (internal

quotation marks omitted and citation omitted).

Because Alexander objects to the Report's recommendations on his NYCHRL claim and

the applications for Judge Aaron to recuse himself, the Court reviews those recommendations *de

novo*.

## III.  Discussion

The Court adopts the Report in full, including its recommendations to grant PPS's motion

for summary judgment and to deny Alexander's requests that Magistrate Judge Aaron recuse

himself from the case. Alexander also appears to argue in his objections that the Court should

not have awarded attorney's fees to PPS when it dismissed Alexander's claim under 42 U.S.C.

§ 2000a. The Court declines to revisit the issue of attorney's fees, which was already settled

before PPS brought the present motion for summary judgment. (*See* ECF No. 103.)

### A.    Summary Judgment on NYCHRL Claim

To survive summary judgment, a nonmovant must raise a genuine issue of material fact.

*See* Fed. R. Civ. P. 56(c). To raise such an issue requires "more than simply show[ing] that there

is some metaphysical doubt as to the material facts." *Caldarola v. Calabrese*, 298 F.3d 156, 160

(2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

(1986). Moreover, a nonmovant "may not rely on conclusory allegations or unsubstantiated

speculation." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal

quotation marks and citation omitted).  Rather, they "must offer some hard evidence showing

that [their] version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d

145, 149 (2d Cir. 1998).  The movant can prevail if, after discovery, "there is no genuine issue as

to any material fact and that the moving party is entitled to a judgment as a matter of law."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  If the movant does produce evidence

tending to exclude the possibility of a genuine dispute of material fact, "the nonmoving party

must come forward with 'specific facts showing that there is a *genuine issue for trial.*'"

*Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)) (emphasis in original).

     The sole remaining claim in this case is Alexander's claim that PPS unlawfully

discriminated against him under the NYCHRL.[*]  *See Alexander I*, 2022 WL 1567447, at *3-4

(ECF No. 70 at 6-7).  The NYCHRL makes it unlawful to deny anyone, on account of their race,

"the full and equal enjoyment . . . of any of the accommodations, advantages, services, facilities

or privileges of the place or provider of public accommodation."  N.Y.C. Admin. Code § 8-

107(4)(a)(1)(a).  To be liable under the NYCHRL, PPS must have been "the owner, franchisor,

franchisee, lessor, lessee, proprietor, manager, superintendent, agent, or employee of any place

or provider of public accommodation."  *Id.* § 8-107(4)(a).  (*See* R&R at 7.)

     As Magistrate Judge Aaron explained, even if Pier 132 were a "place or provider of

public accommodation," the record is clear that PPS did not have the requisite relationship with

Pier 132 necessary to render it liable under the NYCHRL.  (R&R at 7-9.)  Because "the

NYCHRL does not define 'agent'" for purposes of the law, "common law principles apply,"

_____

[*] Alexander also newly asserts in his opposition to PPS's motion for summary judgment
that PPS is liable for assault and intentional infliction of emotional distress.  (ECF No. 143 at 7-
8.)  The Court declines to consider those causes of action, as beyond having little support in the
record, they were improperly raised for the first time in Alexander's opposition to PPS's motion
for summary judgment.  *See Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013).

under which an agency relationship exists if the principal and the agent agree "that the agent will act for the principal and the principal retains a degree of control over the agent."  *White v. Pacifica Found.*, 973 F. Supp. 2d 363, 377 (S.D.N.Y. 2013).

Alexander, who bears the burden to show that a relationship of agency exists, provides no evidence of such a relationship.  *Nippon Yusen Kaisha v. FIL Lines USA Inc.*, 977 F. Supp. 2d 343, 350 (S.D.N.Y. 2013).  As Judge Aaron explains, it is undisputed that PPS had no relationship with Pier 132.  (R&R at 9-10.)  PPS entered into an agreement with Big Fish, the producer for the film shoot at Pier 132, and there is no evidence that PPS dealt directly with Pier 132.  (ECF No. 135 ¶¶ 9, 11.)  The only argument Alexander puts forth about the relationship between PPS and Pier 132 is that from his "previous experience," PPS typically becomes the "lessee, proprietor, provider, and or the supervisor" for places like Pier 132 when it agrees to become a service provider at those locations.  (ECF No. 159 at 10.)  But Alexander cites no evidence for that conclusory claim—nor could he, as the only relevant evidence in the record demonstrates that "PPS had no contractual or other relationship with Pier 132 itself with regard to the [film shoot] event or otherwise," and that PPS's services were instead "paid for . . . by Big Fish."  (ECF No. 137 ¶ 7.)  As Judge Aaron concluded, then, there is no genuine dispute that PPS was not acting as Pier 132's agent during the relevant events.  (*See* R&R 9-10.)  Thus, because Alexander does not offer any contrary evidence that PPS had any dealings with Pier 132, let alone dealings that would rise to the level of an agency relationship, his claim under the NYCHRL falls short.

In his objections to Judge Aaron's Report, Alexander also appears to argue that the film shoot event was open to the public and that PPS should therefore be held liable for discrimination under the NYCHRL.  (ECF No. 159 at 8-9.)  But Judge Aaron's analysis granted

the assumption that Pier 132 was a place of public accommodation, and the Report still concluded that Alexander could not succeed on his claim because there was no evidence that PPS was Pier 132's agent.  The Court agrees, and as a result, Alexander's characterization of the film shoot as a public event—even if accurate—is insufficient to suggest that he suffered discrimination that is cognizable under the NYCHRL.

Because the Court concludes that PPS cannot be liable for the alleged conduct under the NYCHRL, it does not reach the other issues Alexander raises, such as whether he was denied entry to the film shoot on the basis of his race.  Accordingly, the Court grants PPS's motion for summary judgment.

### B.    Recusal

Alexander's next objection is that Magistrate Judge Aaron should have recused himself from the case.  (ECF No. 159 at 12-13.)  In determining whether recusal is required, "the appropriate standard is objective reasonableness—whether an objective, disinterested observer fully informed of the underlying facts, [would] entertain significant doubt that justice would be done absent recusal." *United States v. Carlton*, 534 F. 3d 97, 100 (2d Cir. 2008) (internal quotation marks and citation omitted).  "Events occurring in the course of judicial proceedings generally do not constitute a basis for recusal unless they indicate that the judge has a 'deep-seated favoritism or antagonism that would make fair judgment impossible.'" *United States v. Conte*, 99 F.3d 60, 65 (2d Cir. 1996) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)).

Alexander argues that Judge Aaron should recuse himself from the case because he has taken certain actions, such as denying extensions and awarding PPS attorney's fees.  (ECF No. 159 at 12-13.)  As Judge Aaron explained, however, "it is well-settled that a judge's adverse rulings and decisions against a party almost never are a valid basis for a party to seek disqualification based on bias or impartiality." *Pri-har v. United States*, 83 F. Supp. 2d 393, 397

(S.D.N.Y. 2000).  While Alexander also makes conclusory accusations of other misconduct by

Judge Aaron, such accusations are baseless, and the Court adopts the Report's recommendation

that Alexander's applications for Judge Aaron's recusal be denied.

C.      **Attorney's Fees**

Finally, Alexander attempts to relitigate the Court's previous order directing Alexander to

pay $16,760 in attorney's fees to PPS.  (*See* ECF No. 159 at 10-12.)  That issue has long been

decided.  The Court previously determined that such an award was appropriate given

Alexander's refusal to dismiss his Title II claim despite being informed by opposing counsel and

a prior order by this Court that such a claim was frivolous.  *See Alexander I*, 2022 WL 1567447,

at *2-3 (ECF No. 70 at 4-5) (granting PPS's motion for attorney's fees); *Alexander II*, 2022 WL

16555312, at *1 (ECF No. 103 at 1-2) (awarding PPS $16,760.00 in attorney's fees).  The Court

simply delayed entering a judgment directing payment of those fees pending resolution of the

entire action.  (ECF No. 109.)  The Court therefore declines to reconsider its decision to award

PPS attorney's fees, which is now law of the case.  *See Johnson v. Holder*, 564 F.3d 95, 99 (2d

Cir. 2009) ("[W]hen a court has ruled on an issue, that decision should generally be adhered to

by that court in subsequent stages in the same case unless cogent and compelling reasons militate

otherwise." (internal quotation marks and citation omitted)).

IV.     **Conclusion**

For the foregoing reasons, the Report and Recommendation is hereby ADOPTED and

Alexander's objections are OVERRULED.  Defendant Private Protective Services, Inc.'s motion

for summary judgment is GRANTED.  Plaintiff Jeriel Alexander's applications for the recusal of

Magistrate Judge Aaron are DENIED.

The Clerk of Court is directed to close the motion at ECF No. 133, to enter judgment in favor of Defendant Private Protective Services, Inc. and against Plaintiff Alexander in the amount of $16,760.00 in attorney's fees, and to close this case.

SO ORDERED.

Dated: March 4, 2024
New York, New York

_____
J. PAUL OETKEN
United States District Judge